IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **JUDITH CHUBIRKA,** | : | |
|     **Plaintiff** | : | |
| | : | |
|     v. | : | CIVIL ACTION |
| | : | NO.   04-5010 |
| **INTERNATIONAL PAPER/xpedx** | : | |
| **PAPER & GRAPHICS,** | : | |
|     **Defendant** | : | |
| | : | |

**MEMORANDUM OPINION AND ORDER**

**RUFE, J.**                                                                                                                  **August 2, 2005**

        Plaintiff Judith Chubirka brings this employment discrimination action against Defendant International Paper/xpedx Paper & Graphics ("XPEDX"), her former employer. Plaintiff alleges that XPEDX terminated her in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq. Defendant's Motion for Summary Judgment is now pending before the Court.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

        The following facts are presented in the light most favorable to Plaintiff, the non-moving party. In March 1993, Judith Chubirka started working as an assistant manager in the Allentown, Pennsylvania store of Ailing & Cory, a paper and graphics supply company. She was promoted to store manager in June 1998, putting her in charge of, among other things, inventory, cash flow and expenses. Plaintiff managed two employees, Sheri Yaekel (an assistant manager) and Kathleen Krasley (a salesperson).

In May 1999, XPEDX acquired Ailing & Cory, and Plaintiff became an employee of XPEDX's Stores Division. As a XPEDX employee, Plaintiff had to review XPEDX's Employee Source Book, Safety Checklist, and Loss Prevention Awareness Policy. Plaintiff acknowledged that she had reviewed these documents by signing a New Hire Checklist on August 1, 2000. As a store manager, Plaintiff was responsible for enforcing the closing procedure, including the method of securing cash. Prior to the acquisition, the employee closing the store had to balance the cash on hand with and the registers' reports. Then, leaving $150 in each of the two cash register trays for the next day's business, the employee removed the trays from the registers, left the register drawers open so that the registers would not be damaged in the event of a break-in, and secured the two trays in another room in a box.

XPEDX's safety and loss prevention policies were more specific than Ailing & Cory's. The policies required every store manager to use a locked store safe to secure their cash drawers on a daily basis, as well as to make nightly cash deposits and keep appropriate paperwork.[1] XPEDX's Director of Loss Prevention sent regular emails emphasizing the importance of adhering to XPEDX's policies for securing funds and stating that noncompliance could lead to termination.[2]

Plaintiff's Allentown store - along with several other stores acquired by XPEDX from Ailing & Cory - did not have a safe. Plaintiff brought up this fact to her supervisor, district manager

---

[1] On the New Hire Checklist, Plaintiff indicated that she signed XPEDX's Loss Prevention Awareness Sheet. Ex. 2 to N.T. 2/11/05. Plaintiff recalls reviewing and signing the documents in question. N.T. 2/11/05 at 32-33, 39. Plaintiff's counsel argues that because XPEDX acquired Ailing & Cory in 1999, and the Loss Prevention policy is dated October 1998, Plaintiff must have reviewed a policy from Ailing & Cory. Aside from being non-sensical (counsel does not explain why XPEDX would use something other than its policy), this argument is also flatly contradicted by the record. The Loss Prevention Sheet states "XPEDX" in bold font on each page, and Plaintiff testified that she reviewed the document. In any event, this dispute does not affect the Court's analysis and reasoning below.

[2] See John Ivansthenko e-mails dated 08/16/01, 08/30/01, 10/23/01, 12/28/01, 01/28/02, Exs. 7- to N.T. 2/11/05 (attached as part of Ex. B to Pl's Opp.). These emails were sent prior to Plaintiff's injury.

Conor Nolan, when he audited the store (around April or May 2002), but he failed to note it on his audit form and did not give Plaintiff a clear answer as to whether he wanted her to get a safe. On May 2, 2002, as a result of the store's financial performance and other issues, Plaintiff's supervisors put her on a performance improvement plan. Plaintiff was in the process of complying with the plan when on June 26, 2002 she slipped and broke her foot at her home. She could not walk until September 2002, when she started therapy. In the meanwhile, Plaintiff applied for and received short term disability benefits. In October 2002, Plaintiff spoke to her orthopedic surgeon, Dr. Jaeger, about returning back to work. Dr. Jaeger sent a release to XPEDX's human resources department, stating that Plaintiff could return to work on November 4, 2002. Dr. Jaeger limited Plaintiff to working 4 hours per day during her first two weeks, 6 hours per day during the third and fourth weeks, and 8 hours per day thereafter. These limitations were subject to Plaintiff's ability to work more or less, depending on how she felt that day.

Mr. Nolan approved Plaintiff's reduced work schedule and she returned to work on November 4, 2002. Plaintiff did not request any other accommodations. While Plaintiff was on short term disability, Ms. Yaekle was the acting store manager. Ms. Yaekle and Ms. Krasley were both scheduled to be on vacation on November 15, 2002, so Ms. Yaekle arranged for a floating manager, Joe McKee, to come in and assist Plaintiff. On November 15, 2002, Mr. McKee came to work around 9:30 a.m. and left around 3:30 p.m. Plaintiff asked Mr. McKee to stay later but he refused. Plaintiff, who came in at 7 a.m., stayed in the store until closing it around 5:30 p.m. but forgot to remove one of the two cash register trays from the register before leaving. Unfortunately, that evening burglar(s) broke into the store, pried the cash register drawer open and stole $149 in cash, damaging the register in the process.

After receiving a call from the alarm company the same evening, Plaintiff went back to the store. Although she noticed that the back door appeared damaged and had her husband repair it, she did not realize that the store was robbed until Monday morning, when she saw the registers and reported the theft. Mr. Cape, XPEDX's new Northeast Region Manager, began investigating the incident the same day. Mr. Cape was aware that Plaintiff was out on short-term disability for an injury prior to the incident, and that she was back at work on a reduced schedule. He did not know that Plaintiff worked a full day on November 4, 2002, instead of the four-hour day recommended by her orthopedic surgeon, or that two of her employees were out on vacation that day. Mr. Cape suspended Plaintiff during the pendency of the investigation. Around November 22, 2002, after talking to loss prevention and human resources employees, Mr. Cape advised Plaintiff that she was being terminated for violating company rules. Plaintiff was 48 years old at the time of her termination. She was replaced by Ms. Yaekel, who was 38 years old.

Plaintiff's Complaint alleges that XPEDX replaced her with a younger, healthier individual in violation of federal and state anti-discrimination laws. The Complaint also alleges that XPEDX resented paying Plaintiff short-term disability benefits, did not want her foot injury to become a permanent economic drain on the business, and did not want to provide accommodations, if needed, to her in the future.

XPEDX moves for summary judgment on Plaintiff's disability and age discrimination claims under the ADA, ADEA, and PHRA, arguing that Plaintiff failed to prove a *prima facie* case of either disability or age discrimination. XPEDX further argues that even assuming Plaintiff met her initial burden of proof, her discrimination claims fail because XPEDX terminated her for a legitimate, non-discriminatory reason and Plaintiff presents no evidence of pretext.

## II.   DISCUSSION

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To avoid summary judgment, disputes must be both 1) material, meaning concerning facts that are relevant and necessary and that might affect the outcome of the action under governing law, and 2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party.[3] When deciding a motion for summary judgment, all facts must be viewed and all reasonable inferences must be drawn in favor of the nonmoving party.[4]

### A.   DISABILITY DISCRIMINATION CLAIMS

Plaintiff presents no direct evidence of discrimination based on her alleged disability.[5] Accordingly, the McDonnell Douglass burden-shifting analysis applies to all of Plaintiff's claims.[6]

---

[3] See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[4] Matsushita Elec. Indus. Co., Ltd., 475 U.S. at 587.

[5] See Woodson v. Scott Paper Co., 109 F.3d 913, 930 (3d Cir. 1997) ("Direct evidence is evidence that proves an ultimate fact in the case without any process of inference, save the inferences of credibility.  In contrast, circumstantial evidence is offered to prove an ultimate fact, but an inferential step by the factfinder is required to reach that fact.") (internal citations and quotation omitted); see also Glanzman v. Metropolitan Mgm't Corp., 391 F.3d 506, 512 (3d Cir. 2002) (to be "direct" for the purposes of the mixed-motives test, evidence must be sufficient to allow jury to find that employer placed a substantial negative reliance on the plaintiff's age in reaching their decision). Plaintiff essentially concedes that she has no direct evidence of disability or age discrimination ("essentially" is used here because Plaintiff's opposition is quite muddled in its structure and logic) and argues that XPEDX's proffered reasons for her termination were pretextual.

[6] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) (setting forth the familiar burden-shifting framework for disparate treatment cases); Williams v. Phila. Housing Auth. Police Dep't, 380 F.3d 751, 761 n.6 (3d Cir. 2004) (discussing the plaintiff's ADA claims under the McDonnell Douglass burden-shifting analysis without addressing PHRA claims because "analysis of an ADA claim applies equally to a PHRA claim"). Plaintiff's counsel - without citing to any Third Circuit authority - makes a half-hearted attempt to argue that the Court "may now consider a 'mixed-motives' analysis" in a circumstantial evidence case at the summary judgment stage [instead of the

Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence. If a plaintiff establishes her *prima facie* case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection. The plaintiff then must establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action."[7]

To establish a *prima facie* case of disability discrimination Plaintiff must show that: (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an otherwise adverse employment decision as a result of discrimination.[8]

### 1. Disability

A 'disability' is defined by the ADA as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (B) a record of such an

---

McDonnell Douglass framework]. In a mixed-motives case, the plaintiff shows that both legitimate and illegitimate, discriminatory reasons were involved in the adverse decision. Watson v. SEPTA, 207 F.3d 207, 215 (3d Cir. 2000). Once plaintiff presents direct evidence of discrimination, the employer must prove that it would have fired the plaintiff even if it had not considered her age or disability. See Fakete v. Aetna, 308 F.3d 335, 338 (3d Cir. 2002).

This Circuit continues to use the McDonnell Douglass burden-shifting framework where the plaintiff introduces only circumstantial evidence of disparate treatment, and Plaintiff's counsel does not present any authority to the contrary. See, e.g., Williams, 380 F.3d at 761; Glanzman, 391 F.3d at 512 (to warrant a mixed-motives analysis on ADEA claims, the "plaintiff needs to argue and produce evidence of discriminatory attitudes about age that were causally related to the decision to fire [her]"). Plaintiff has not presented any such evidence of discriminatory attitudes about age or disability here. The Supreme Court's decision in Desert Palace, Inc. v. Costa, 539 U.S. 90, 101 (2003) ("direct evidence of discrimination if not required for a plaintiff to obtain a mixed-jury instruction under Title VII"), is inapplicable in this case inasmuch as Desert Palace addresses statutorily-based, post-trial jury instructions in a *Title VII* case, and has not been extended to ADA or ADEA claims in the summary judgment context by the Third Circuit. See also Raytheon v. Hernandez, 540 U.S. 44 (2003) (a post-Desert Palace decision in which Supreme Court approved use of McDonnell Douglass framework at summary judgment stage in an ADA disparate treatment case).

[7] Sarullo v. United States Post Office, 352 F.2d 789, 797 (3d Cir. 2003).

[8] Shaner v. Synthes (USA), 204 F.3d 494, 500 (3d Cir. 2000).

impairment; or (C) being regarded as having such an impairment."[9]  XPEDX argues that Plaintiff is not disabled because her injury was a temporary impairment, which does not as a matter of law substantially limit her in any major life activity.  XPEDX also asserts that it never regarded Plaintiff as disabled.

Generally, "temporary, non-chronic impairment[s] of short duration" fall short of substantially limiting an individual in a major life activity.[10]  The Equal Employment Opportunity Commission indicated that "broken limbs, sprained joints, [and other] impairments of a temporary nature with little or no long term or permanent impact, cannot as a matter of law substantially limit an individual in a major life activity."[11]  In determining whether an impairment is substantially limiting, the relevant factors are the nature and severity of the impairment, its duration or expected duration, and the permanent or long term impact of the impairment.[12]

Plaintiff's foot fracture, while no doubt quite painful, was also temporary.  Plaintiff argues that "severe" temporary impairments may rise to the level of disability if their duration is indefinite, and that she was operating under "severe" restrictions from her physician when she returned to work in November 2002.  However, all that the record before this Court shows is that Plaintiff's orthopedic surgeon allowed her to go back to work on a reduced schedule for the first four

---

[9] Williams, 380 F.3d at 761 (quoting 42 U.S.C. § 12102(2)).

[10] Id. at 765. An individual is "substantially limited" if she is "(i) unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." Id., 380 F.3d at 762 (quoting EEOC regulations).

[11] Id. at 765.

[12] Id. (quoting EEOC regulations).

weeks - and even then Plaintiff could work longer hours if she felt like doing so.[13] Moreover, on the day of the burglary Plaintiff worked more than an entire day and she presents no evidence that her foot injury impeded her from (and while) doing so. Plaintiff does not offer any evidence that she or her physician considered her injury to be a long-term impairment. Such a transitory condition does not qualify as disability under the ADA.[14]

    a. <u>Major Activity of Working</u>

Initially, XPEDX argued that Plaintiff failed to present evidence of being substantially limited in a major life activity. "Major life activities" are "activities that are of central importance to daily life," such as "walking, seeing, and hearing."[15] XPEDX points out that, according to Plaintiff's own testimony, she is not limited in walking, breathing, doing housework or working.[16] Plaintiff fails to address this argument in her Opposition. Finally, XPEDX correctly points out that Plaintiff's inability to do aerobics does not render her disabled because such recreational activities are not "major life activities."[17]

---

[13] N.T. 2/11/05 at 69.

[14] See <u>Danyluk-Coyle v. St. Mary's Medical Center</u>, No. C.A. 00-5943, 2001 WL 771048 (E.D. Pa. Apr. 5, 2001) (fractured ankle was a temporary, non-chronic injury not rising to the level of disability even though the plaintiff received short-term disability benefits and was off work for about four months).

[15] <u>Toyota Motor Mfg. Kentucky, Inc. v. Williams</u>, 534 U.S. 184, 197 (2002) ("these terms need to be interpreted strictly to create a demanding standard for qualifying as disabled").

[16] N.T. 2/11/05 at 147-148. Plaintiff testified that she does not take "fast walks" anymore and sometimes she has a limp in bad weather. These impairments also do not rise to the level of disability under the ADA. See <u>Taylor v. Pathmark Stores, Inc.</u>, 177 F.3d 180 (3d Cir. 1999) (ankle injury not a disability although causing slight limp, need for ten-minute breaks while walking or standing, and occasional use of cane or crutch); <u>Kelly v. Drexel Univ.</u>, 94 F.3d 102, 106-107 (3d Cir. 1996) (comparatively moderate restrictions on ability to walk or climb stairs, such as a limp, are not disabilities).

[17] See <u>Toyota</u>, 534 U.S. at 197; <u>Buskirk v. Apollo Metals</u>, 116 F. Supp.2d 591, 598 (E.D. Pa. 2000) (inability to engage in various athletics, driving and performing household chores do not qualify individual for ADA protection).

Plaintiff's only response is that she is limited in the major life activity of working. In this context, Plaintiff must be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."[18] Plaintiff presents no evidence of being restricted in her ability to perform either a class of jobs or a broad range of jobs in various classes.[19] Plaintiff also completely fails to present any general employment demographics to show from what jobs in her geographic area she has been excluded.[20] The only evidence Plaintiff cites in support of her argument is that she returned to work on a temporarily reduced schedule. However, a brief restriction on the individual's work schedule is insufficient to establish a substantial limitation in the major life activity of working.[21] Indeed, as mentioned earlier, on the day of the burglary Plaintiff worked a full day. Accordingly, Plaintiff simply failed to present any evidence of being "disabled" under the ADA.

    b.    <u>Whether Plaintiff Was "Regarded As" Disabled</u>

An individual "may be considered disabled even if his impairment does not substantially limit a major life activity, if his impairment is treated by a covered entity as constituting

---

[18] Taylor, 177 F.3d at 188.

[19] Plaintiff testified about working several jobs of different classes since her termination by XPEDX, such as a teachers' aid and a baker. N.T. 2/11/05 at 147, 154. Plaintiff also testified that, if not for her termination, she would have been able to fully perform her duties as XPEDX's store manager after four weeks on the reduced work schedule. N.T. 2/11/05 at 147-148.

[20] Courts in this Circuit consider such failure fatal to summary judgment. See, e.g., Balls v. AT&T Corp., 28 F. Supp. 2d 970, 975 (E.D. Pa. 1998).

[21] See Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 644-45 (2d Cir. 1998) (restrictions on police officer's work schedule were insufficient to establish that he was significantly restricted in his ability to work at a class or broad range of jobs and thus was 'substantially limited' in major life activity of working and disabled under ADA); see also Williams, 380 F.3d at 763 (inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working).

such limitation."[22]  The plaintiff must show either that (1) the employer mistakenly believes that she has a physical impairment that substantially limits one of more major life activities, or (2) the employer mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities.[23]  "In either case, the definition of 'substantially limits' remains the same as it does in other parts of the statute--i.e., if the individual is attempting to establish that the employer believed the individual to be limited in the life activity of 'working,' then 'working' must encompass a broad class of jobs."[24]

Plaintiff argues that XPEDX regarded her as disabled because it was fully aware of her injury, her receipt of short-term disability benefits, and her return to work under restricted conditions.  This argument is contrary to the established law in this Circuit.  A "mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that [sic] perception caused the adverse employment action."[25]  Further, "an offer of accommodation does not, by itself, establish that an employer 'regarded' an employee as disabled."[26]  Finally, Plaintiff's temporary reduced work schedule is not evidence that XPEDX believed her to be substantially limited in the major life activity of working.  Whether XPEDX regarded Plaintiff as unable to work as a store manager is not the issue.  Rather, Plaintiff must prove that XPEDX believed Plaintiff to be limited in a class of jobs

---

[22] Kelly, 94 F.3d at 108.

[23] Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999).  For an unknown reason Plaintiff's counsel devotes at least four pages of the opposition brief to repetitive quotes describing this relatively straightforward standard.

[24] Tice v. Centre Area Transp. Auth., 247 F.3d 506, 514 (3d Cir. 2001).

[25] Kelly, 94 F.3d at 109.

[26] Williams, 380 F.3d at 776.

or a broad range of jobs in various classes. Plaintiff has not presented such evidence. It follows that Plaintiff failed to prove that she is "disabled" or "regarded as" disabled under the ADA, and has not proved her prima facie case of discrimination. Summary judgment is appropriate on Plaintiff's disability discrimination claims under the ADA and the PHRA.

### 2.     Legitimate Reason for Termination

Even assuming Plaintiff carried her burden of proving a *prima facie* discrimination case, the burden would shift to XPEDX to articulate a legitimate, non-discriminatory reason for her termination.[27] XPEDX terminated Plaintiff because her failure to secure the cash trays resulted in a theft of $149 and damage to store equipment. This is a legitimate reason that is not, on its face, motivated by a discriminatory animus. Plaintiff argues that XPEDX's loss prevention policies required each store to have a safe, but Plaintiff's supervisors did not install one in the Allentown store, and are using Plaintiff's failure to secure the store funds as a pretext to terminate her based on her disability.

The plaintiff may defeat a motion for summary judgment by pointing "to some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[28] "To discredit the employer's proffered reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's

---

[27] Shaner, 204 F.3d at 500.

[28] Id. at 501 (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons."[29]

Here, Plaintiff admitted that she failed to secure the cash register tray and leave the register drawers open in accordance with the store's practice on the night of the burglary.[30] Mr. Cape, during the course of his investigation of the circumstances of the burglary, learned that several stores in the region did not have safes and used the same method of securing the cash register trays at night, removing them from the register and placing them in a box in a back room.[31] Because this method was deemed acceptable prior to Mr. Cape's employment with XPEDX, he did not take Plaintiff's failure to use a safe into account when determining whether to terminate Plaintiff.[32] Plaintiff admits that she failed to secure the register tray in any manner but disagrees with the punishment.[33]

Mr. Cape's ultimate decision to terminate Plaintiff may have been rash and certainly was a severe form of punishment for violating the company's policies. However, it is not for the Court to secondguess the employer's decisional process by deciding "whether the employer is wise, shrewd, prudent or competent."[34] Although Plaintiff's situation may be sympathetic, Plaintiff fails to present any evidence from which the Court could rationally find XPEDX's proffered legitimate

---

[29] Id. at 501 (quoting Fuentes, 32 F.3d at 765) (internal quotations and punctuation omitted).

[30] N.T. 2/11/05 at 99-100.

[31] N.T. 4/28/05 at 23.

[32] Id. at 23.

[33] N.T. 2/11/05 at 100, 138.

[34] Pamintuan v. Nanticoke Mem. Hosp., 192 F.3d 378, 386 (3d Cir. 1999).

reason for terminating Plaintiff was pretextual.[35]

Accordingly, the Court finds that Plaintiff failed to satisfy her burden of production at the first and the third steps of the McDonell Douglass framework and grants XPEDX's motion for summary judgment on Plaintiff's disability discrimination claims under the ADA and the PHRA.

### 3. Reasonable Accommodation

Plaintiff's Complaint also alleges that XPEDX failed to grant her reasonable accommodation under the ADA and did not engage in any "interactive process" with her or her physicians to determine a long-term strategy utilizing the company's benefits to enable Plaintiff to return to work on a part-time basis. Failure to make a reasonable accommodation for a disabled and qualified employee constitutes discrimination under the ADA.[36] However, as discussed above, Plaintiff failed to carry her burden of proving that she is "disabled" or "regarded as" disabled under the ADA. Furthermore, Plaintiff testified that the reduced work schedule was the *only* accommodation she requested, and this request was granted.[37] The Complaint also alleges that XPEDX failed to reasonably accommodate Plaintiff on November 15, 2002, the day of the burglary. Plaintiff worked a full day from 7 a.m. until 5:30 p.m. despite it being her second week at work, during which time Plaintiff's orthopedic surgeon recommended no more than four hours of work a day. XPEDX brought in Mr. McKee, the floating manager, to assist Plaintiff because her two other employees were out on vacation. Mr. McKee left between 3:00 and 3:30 p.m. even though she asked

---

[35] See also Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997) (en banc) (the plaintiff must show "not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason.").

[36] Williams, 380 F.3d at 771.

[37] N.T. 2/11/05 at 76, 136.

him to stay longer.[38] Plaintiff knew that Mr. McKee generally came in late and left work early, however, she did not think (or know) that "he would come in that late or go home that early."[39]

XPEDX points out that Plaintiff, as the store manager, could have left the store while Mr. McKee was there [40] or could have ordered Mr. McKee to stay longer.[41] Plaintiff did not contact anyone for additional assistance.[42] Plaintiff's only response is that XPEDX's refusal "to get her any help quickly nullified any [granted] accommodations." [43] However, this assertion is not supported by the record before the Court, and an "underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation which the XPEDX-employer has denied."[44]

Looking at the record in a light most favorable to Plaintiff, it shows that instead of complaining about Mr. McKee (and his shoddy work attendance) to anyone on or before November 4, 2002 and risk exposing him to disciplinary action, Plaintiff decided to "grin and bear" it. As a dedicated and loyal employee, Plaintiff stayed at work for ten and a half hours. She then forgot to secure one of the two cash trays when she closed the store. When he decided to terminate Plaintiff, Mr. Cape did not know that Plaintiff spent (more than) a full day at work on November 4, 2002, that

---

[38] Id. at 84.

[39] Id. at 85, 121.

[40] Id. at 85-86.

[41] N.T. 4/29/05 at 22.

[42] N.T. 2/11/05 at 84.

[43] Pl's Opp. at 22-23.

[44] Flemmings v. Howard univ., 198 F.3d 857, 861 (D.C. Cir. 1999).

two of her employees were out on vacation, and did not know that Mr. McKee left early that day.[45] Perhaps Mr. Cape, who was with XPEDX for only two and a half weeks at that time, did not bother to ask.  While these are regrettable omissions in his investigation of the incident that undermine the ultimate fairness of his decision, they are not evidence of XPEDX's refusal to grant Plaintiff a reasonable accommodation.

**B.    AGE DISCRIMINATION CLAIMS**

The McDonell Douglass burden-shifting analysis applies to Plaintiff's claims under the ADEA and the PHRA as well.[46]  The ADEA makes it unlawful, *inter alia*, for an employer to fire a person who is at least forty years old because of her age.[47]  To establish a prima facie case of unlawful termination under the ADEA, Plaintiff must show (1) that she was at least forty years old, (2) that she was fired, (3) that she was qualified for the job from which she was fired, and (4) that she "was replaced by a sufficiently younger person to create an inference of age discrimination."[48]  If Plaintiff establishes her *prima facie* case, the remainder of the analysis is the same as in Plaintiff's

---

[45] N.T. 4/28/05 at 37-38.

[46] Kautz v. Met-Pro Corp., 412 F.3d 463, 465 (3d Cir. 2005) (applying McDonnell Douglass burden-shifting framework to the plaintiff's age discrimination claims under ADEA and PHRA).  As stated previously, Plaintiff does not present any direct evidence of age discrimination.  The Third Circuit noted that "while courts agree on what is *not* direct evidence--*e.g.*, statements by non-decisionmakers, statements by decisionmakers unrelated to the contested employment decision, and other 'stray remarks'--there is no consensus on what is."  Fakete, 308 F.3d at 338 n.2.  The Fakete Court also noted that "the adjective 'direct' is imprecise because certain circumstantial evidence" - such as statements of a person involved in the decisionmaking process that reflect a discriminatory or retaliatory animus - "is sufficient to shift the burden of proof regarding causation, if that evidence can fairly be said to directly reflect the alleged unlawful basis for the adverse employment decision."  Id. at 339.  However, in the case at hand the Court does not have to struggle with the precise definition of "direct evidence" because Plaintiff concedes her claim of age discrimination is based solely on her speculation that age may have played a role in her termination.  See N.T. 2/11/05 at 166.

[47] 29 U.S.C. §§ 623(a), 631(a).

[48] Keller, 130 F.3d at 1108.  XPEDX conveniently omits the "sufficiently younger person" language from its recitation of the standard in both its brief and reply.

ADA claim - XPEDX must come forward with evidence of "a legitimate nondiscriminatory reason for the discharge."[49]  If XPEDX succeeds, Plaintiff must submit evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[50]

XPEDX does not dispute that Plaintiff is a member of a protected class under the ADEA because she over 40 years old, that she was fired, and that she was qualified for the job from which she was fired.  At the time of her termination Plaintiff was 48 years of age.  Her replacement Ms. Yaekel was ten years younger at the time.  XPEDX argues that Plaintiff cannot establish her *prima facie* case because she cannot demonstrate an inference of discrimination based solely on the fact that she was replaced by a younger employee.  Plaintiff is correct in stating that her replacement is "sufficiently younger" for the purposes of establishing a *prima facie* case of age discrimination.[51]

The burden then shifts to XPEDX to offer a legitimate, non-discriminatory reason for Plaintiff's termination.  XPEDX's reasons for terminating Plaintiff, i.e. her failure to secure the store funds, have been discussed previously.  As also stated previously, Plaintiff fails to point out "such

---

[49] Id., at 1108.

[50] Id.

[51] The Third Circuit noted that there is "no particular age difference that must be shown, but while different courts have held that a five year difference can be sufficient, a one year difference cannot." Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231 (3d Cir. 1999). Plaintiff also argues that she established an inference of discrimination because she was in a protected class while her replacement was not. This is an incorrect statement of the law - which Plaintiff happens to cite in her Opposition. See id., at 235-36 (what matters is not whether the plaintiff was replaced by someone outside of the protected class but whether the plaintiff lost because of her age). The Showalter Court found that the plaintiff satisfied the "sufficiently younger" prong because he was replaced by two employees, one eight years younger and another sixteen years older than the plaintiff. See also Sempier v. Johnson & Higgins, 45 F.3d 724, 729 (3d Cir. 1995) ("sufficiently younger" prong satisfied where the plaintiff was replaced by one employee four years younger and other ten years younger).

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in XPEDX's proffered legitimate reasons "that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons."[52]  To reiterate, Plaintiff claims that XPEDX's reasons are fabricated because Plaintiff's store did not have a safe, that Plaintiff's supervisors were aware of this fact, and therefore Plaintiff could not have been expected to follow the XPEDX's loss prevention policy.  However, Mr. Cape testified that he did not take Plaintiff's failure to secure the register tray in a safe into account when considering what action should be taken against Plaintiff.  As Plaintiff testified herself, she failed to secure the ultimately stolen money in *any* way.[53]  Plaintiff does not show that XPEDX's proffered reason is "so plainly wrong that it cannot have been [XPEDX's] real reason."[54]  Therefore, Plaintiff failed to satisfy her burden of production at the third step of the McDonell Douglass framework and summary judgment for XPEDX on Plaintiff's age discrimination claims under the ADEA and the PHRA is proper.

C.    RETALIATION CLAIM

Plaintiff's Complaint asserted that XPEDX terminated her for having sought accommodation for her disability and because XPEDX resented having had to pay her income protection while she was on short-term disability.[55]  To establish a *prima facie* case of retaliation under the ADA, the plaintiff must show "(1) protected employee activity; (2) adverse action by the

---

[52] Shaner, 204 F.3d at 501 (internal quotations and punctuation omitted).

[53] N.T. 2/11/05 at 100.

[54] Keller, 130 F.3d at 1109.

[55] Compl. ¶¶ 28, 38.

employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."[56] The "plaintiff's ultimate burden in a retaliation case is to convince the factfinder that. . . retaliatory animus played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process."[57]

XPEDX's motion for summary judgment completely fails to address Plaintiff's retaliation claim. Therefore, this claim survives summary judgment.

IV. **CONCLUSION**

For the foregoing reasons, construing the evidence in the light most favorable to Plaintiff, Defendant's Motion for Summary Judgment on Plaintiff's claims of disability and age discrimination is granted.

An appropriate Order follows.

---

[56] Shaner, 204 F.3d at 500 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997)).

[57] Id. at 501 n.8.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JUDITH CHUBIRKA,**  Plaintiff   v.   **INTERNATIONAL PAPER/xpedx PAPER & GRAPHICS,**  Defendant | CIVIL ACTION  NO.   04-5010 |

**ORDER**

**AND NOW**, this 2nd day of August, 2005, upon consideration of Defendant's Motion for Summary Judgment [Doc. #14], Plaintiff's Response thereto and accompanying documents and exhibits [Doc. ##17-19], and Defendant's Response [Doc. #24], it is hereby **ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.

Specifically, Defendant's Motion is **GRANTED** and **JUDGMENT IS ENTERED** in favor of Defendant against Plaintiff on Plaintiff's claims of disability and age discrimination under the ADA, the ADEA, and the PHRA.

Plaintiff's retaliation claim under the ADA and the PHRA will remain scheduled for the August 16, 2005 trial pool.

It is so **ORDERED**.

BY THE COURT:

/s/ Cynthia M. Rufe

**CYNTHIA M. RUFE, J.**